KENNETH J. EILERS *v.* BERNICE C. EILERS
(AC 24662)

Bishop, DiPentima and McLachlan, Js.

---

Argued February 17—officially released May 24, 2005

*Campbell D. Barrett,* with whom, on the brief, were *C. Michael Budlong, Jonathan P. Budlong* and *Kevin W. Hadfield,* certified legal intern, for the appellant (plaintiff).

*Jeffrey D. Brownstein,* for the appellee (defendant).

BISHOP, J. In this postjudgment marital dissolution matter, the plaintiff, Kenneth J. Eilers, appeals from the order of the trial court denying in part and granting in part his motion for modification, and from the court's denial of his motion to open and to set aside the judgment. On appeal, the sole issue raised by the plaintiff is whether the court violated his due process rights by terminating the evidentiary hearing before the plaintiff had completed the presentation of his case-in-chief. We affirm the judgment of the trial court.

The following factual and procedural background is relevant to our consideration of the plaintiff's appeal. The marriage of the plaintiff and the defendant, Bernice C. Eilers, was dissolved on August 14, 2002. In conjunction with the marital dissolution, the court adopted the parties' parenting plan that provided for the parties to share joint custody of their three minor children, whose primary residence was to be with the plaintiff. The parties' parenting plan set forth the specific terms of their respective access to and parenting responsibilities for the children. Additionally, and pursuant to the parties' agreement, the court ordered the plaintiff to pay alimony to the defendant in the amount of $1200 per week for six years. Although the term of the alimony was nonmodifiable, the amount of alimony was subject to modification.

On June 30, 2003, the plaintiff filed a motion for a modification of the judgment, seeking an order granting him sole custody of the children, a termination of the defendant's rights of access to the children and a reduction or elimination of his alimony obligation. The stated reasons for the plaintiff's motion were the defendant's arrest on charges of possession of marijuana and cocaine, and her alleged ongoing substance abuse. Shortly thereafter, on July 3, 2003, the defendant filed

a motion for contempt, and on July 29, 2003, she filed a motion for counsel fees in conjunction with the pending motions.

A hearing on the parties' motions took place on July 29, 2003. After the plaintiff was examined and cross-examined, counsel for the plaintiff called the defendant to testify as part of his case-in-chief. After the defendant was examined and cross-examined, the court, sua sponte, terminated the hearing during the plaintiff's redirect examination of the defendant.[1]

---

[1] The transcript reflects that in his redirect examination of the defendant, the plaintiff was attempting to elicit testimony concerning the sleeping arrangements when the children stayed with the defendant and, specifically, whether a certain male acquaintance of the defendant by the name of Steven Pollard was present with the defendant and the children. The transcript of the aborted redirect examination encompasses less than three pages. It is as follows:

"[The Plaintiff's Counsel]: Ma'am, Mr. Pollard is locked away for what?

"[The Defendant]: For—

"[The Defendant's Counsel]: If you know. Do you know?

"[The Plaintiff's Counsel]: Your Honor, I object to counsel advising his witness how to answer the questions.

"[The Defendant's Counsel]: I'm sorry.

"[The Defendant]: Specifically, no, I don't know.

"[The Plaintiff's Counsel]: Well, how long has he been incarcerated?

"[The Defendant]: That I don't know, either. I don't know that, either. I hope it's for a very long time.

"[The Plaintiff's Counsel]: But he told the police that he lived with you. Is that correct?

"[The Defendant]: Yes, he did tell the police that.

"[The Plaintiff's Counsel]: And your children slept at his apartment. Is that right?

"[The Defendant]: Not since way before any of this behavior came about.

"[The Plaintiff's Counsel]: No, no—

"[The Defendant]: Yes, they did.

"[The Plaintiff's Counsel]: How much before, ma'am?

"[The Defendant]: Oh, I think it was in December, before December.

"[The Plaintiff's Counsel]: All right. So—

"[The Defendant]: It was in November, I believe, that they slept over, the month of November.

"[The Plaintiff's Counsel]: So, the two and one-half months that you lived with him—

"[The Defendant]: I did not live with the man.

"[The Plaintiff's Counsel]: Oh, that you dated him—were before November or after November?

"[The Defendant]: The end of October to, probably—well, I saw him. It

As the transcript indicates, neither party objected to the court's decision to terminate the proceedings. Significantly, the plaintiff's counsel did not indicate that he had any additional evidence or witnesses to offer or that he had further inquiries for the defendant.

Subsequently, by order filed August 4, 2003, the court granted in part and denied in part the plaintiff's motion

---

was the middle of November, actually, until February, the beginning of February, end of January I stopped seeing him.

"[The Plaintiff's Counsel]: So, it sounds to me like your children slept at his apartment with you there within the first two weeks of your knowing him or dating him.

"[The Defendant]: No, I knew him well before then.

"[The Plaintiff's Counsel]: All right. The first two weeks of you dating him, if I get those November dates right?

"[The Defendant]: November—okay, then I take that back. It had to be December. I actually was contemplating living with him, moving in with him at that point in time.

"[The Plaintiff's Counsel]: And, now, how many bedrooms in that apartment?

"[The Defendant]: Could have been one or two. It was a five—

"[The Plaintiff's Counsel]: You don't remember?

"[The Defendant]:—it was a five, it depends upon how it was set up, Mr. Budlong.

"[The Defendant's Counsel]: Your Honor, I'm going to object. I'm not sure what the relevance is.

"[The Defendant]: What difference does it make?

"[The Defendant's Counsel]: He just gave me a motion for judgment and—

"[The Defendant]: My children aren't listening at the door while I'm sleeping with someone like they do with him.

"[The Defendant's Counsel]:—the four corners of that is because of this cohabitation with Mr. Pollard, you know, the alimony should be terminated or reduced. I mean, that's not in front of the court at this time.

"[The Plaintiff's Counsel]: Credibility, Your Honor. I asked her for credibility purposes.

"[The Defendant]: It's a joke.

"[The Plaintiff's Counsel]: Ma'am, in the automatic check system—

"The Court: Ma'am, step down. Ma'am, step down. You're done.

"[The Defendant]: Thank you.

"The Court: Had enough of your comments. Anything else?

"[The Defendant's Counsel]: What? Oh.

"The Court: I need a copy of your motion, counsel, for contempt. Thank you, gentlemen. I'll take the papers. I'll give you a decision.

"[The Plaintiff's Counsel]: Thank you, Your Honor.

"[The Plaintiff]: Thank you, Your Honor.

(The hearing is ended.)"

to modify the dissolution judgment. In sum, the court denied the plaintiff's request for sole custody, but suspended the defendant's overnight visitation with the children. The court ordered the defendant to participate in a substance abuse program and ordered her to have random alcohol and drug screening as a condition of the restoration of overnight visitation. The court denied the plaintiff's request to modify alimony and the defendant's motion for counsel fees. Additionally, the court denied, without prejudice, the defendant's motion for contempt. Finally, the court, sua sponte, appointed a guardian ad litem for the children.

Thereafter, on August 28, 2003, the plaintiff filed a motion to open and to vacate the court's judgment and to schedule a new hearing on the ground that he was denied his due process rights to present evidence in support of his motion. After the court denied the plaintiff's motion to open and to vacate, the plaintiff filed an appeal from the court's decision on his motion to modify alimony and custody, and from the court's refusal to open and to vacate its judgment to permit further evidence.

Although the plaintiff has appealed both from the orders entered by the court pursuant to the parties' motions and from the court's refusal to open its judgment to permit further evidence, the plaintiff has neither raised nor briefed any issues related to the substance of the court's August 4, 2003 orders. Rather, the plaintiff simply has appealed from the orders without specifying the manner in which the court's judgment was legally incorrect or an abuse of discretion. Faced with no claims regarding the judgment itself, we have no basis on which to review its terms. Therefore, in accordance with our longstanding jurisprudence, we will not review issues that have not been presented on appeal. See *Tadros* v. *Tripodi*, 87 Conn. App. 321, 334, 866 A.2d 610 (2005). Thus, the sole issue for our consideration

is whether the court abused its discretion in refusing to open and to vacate its judgment regarding the plaintiff's motion to modify custody and alimony.

As a preliminary matter, we note our standard of review of the court's denial of a motion to open. "We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 809, 695 A.2d 1010 (1997). "In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court reasonably could conclude as it did." (Internal quotation marks omitted.) *Brehm* v. *Brehm*, 65 Conn. App. 698, 705, 783 A.2d 1068 (2001).

We previously have confronted a party's claim that he or she has been denied an opportunity to present evidence in regard to a matter for judicial adjudication. In *Szot* v. *Szot*, 41 Conn. App. 238, 674 A.2d 1384 (1996), we reversed the trial court's judgment that converted a legal separation into a marital dissolution on the ground that the court had violated the plaintiff's right to due process by terminating a hearing prematurely and, thus, denying her a reasonable opportunity to be heard on the issues involved. Id., 238–39. Our recitation of the facts in *Szot* is instructive. We stated: "During the plaintiff's wide ranging cross-examination of the defendant, she touched on many areas. Her last question was: '[N]ow have you ever taken your son to an "R" rated movie?' At that point, the court abruptly ended the questioning and the hearing. After the court ruled that there had been no substantial financial change since the legal separation, counsel for the plaintiff indicated

that she had not had an opportunity to prove that there had been such a change. The court then entered the same financial, custody and visitation orders as had been entered at the time of the separation decree." Id., 240.

The opinion in *Szot* reveals that as soon as the court stated its belief that there had been no change in the parties' financial circumstances, the plaintiff's counsel objected on the ground that she had not been provided the opportunity to prove the alleged changes in circumstances. In reversing the judgment of the trial court in *Szot*, we stated: "A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . ." (Internal quotation marks omitted.) Id., 241. Further, the court opined: "Generally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. . . . It is a fundamental tenet of due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution that persons whose property rights will be affected by a court's decision are entitled to be heard at a meaningful time and in a meaningful manner. . . . Where a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing an order cannot be sustained." (Citations omitted; internal quotation marks omitted.) Id., 241–42. The court in *Szot* concluded: "The court may have been annoyed by the plaintiff's counsel and her insistence on conducting a rather slow moving cross-examination that often did not deal directly with the matters at issue. We also appreciate the court's irritation when counsel repeated

questions to which objections had been sustained. The plaintiff, nevertheless, had a due process right to be heard. The trial court had the power to control the plaintiff's cross-examination by confining the questions to relevant matters. In addition, the court had the power to sanction counsel if the court's instructions were disobeyed. The court, however, did not have the right to terminate the hearing before the plaintiff had a fair opportunity to present evidence on the contested issues." Id., 242. Thus, in accordance with the tenor of *Szot*, we hold that a party has a due process right to present evidence on contested factual issues and that a court's annoyance or impatience with the pace and range of questioning or the court's disgust with a witness will not justify the termination of a hearing before a party has been given a reasonable opportunity to examine and to cross-examine witnesses on facts pertinent to the issues at hand.

Nothing in *Szot*, however, suggests that a party's right to present evidence is unlimited. To the contrary, we previously have determined that the court reasonably may limit the time allowed for an evidentiary hearing. In *Friezo* v. *Friezo*, 84 Conn. App. 727, 854 A.2d 1119, cert. denied, 271 Conn. 932, 859 A.2d 930 (2004), we affirmed the judgment of the trial court notwithstanding that court's termination of a hearing over the objections of counsel. As in *Szot*, the *Friezo* facts are instructive. Unlike the situations in *Szot* and in this case, *Friezo* involved a short calendar argument regarding alimony pendente lite and implicated the rule that if a short calendar matter is anticipated to take longer than one hour, the court may assign it to a later certain date. Id., 731–32 n.5; see Practice Book § 25-34. The *Friezo* record revealed that despite the fact that one counsel had indicated that the hearing would take approximately five minutes and the other counsel had suggested it would take approximately thirty minutes, the eviden-

tiary hearing encompassed more than one hour during which both parties were examined and cross-examined, although not to the extent desired by the defendant. Id. It was during the defendant's cross-examination of the plaintiff that the court terminated the hearing at 5 p.m. Id. Although not stated expressly in *Friezo*, it is implicit in the court's opinion that both parties had an adequate opportunity to present evidence and to cross-examine adverse witnesses prior to the court's conclusion of the hearing, notwithstanding the defendant's protestations that he wanted to continue his cross-examination of the plaintiff. Thus, unlike *Szot*, in which this court found that one party had been denied a meaningful opportunity to present evidence, we made no similar finding in *Friezo*. This distinction is key to harmonizing *Szot* and *Friezo*, and provides an avenue for our analysis of the issue at hand.

At the outset, we embrace and repeat the admonition in *Szot* that a trial court may not terminate an evidentiary hearing merely because of its impatience with the pace of the proceedings; see *Szot* v. *Szot*, supra, 41 Conn. App. 242; nor may the court terminate a hearing merely because of its disgust with a witness. In an adversary proceeding, the rules of evidence adequately equip counsel with the ability to object to irrelevant questions and, more to the point, to ask the court to intercede to cause a witness to respond directly to questions. In this instance, rather than permit the adversary system to operate, the court incorrectly interjected itself into the proceedings causing them to come to a premature conclusion. That said, however, a party's constitutionally protected right to present evidence is not unbounded. Here, as in *Friezo* and unlike in *Szot*, we conclude that notwithstanding the incorrectness of the court's termination of the hearing, the plaintiff was not denied a meaningful opportunity to present evidence or to cross-examine the defendant. The record

reveals that the plaintiff had a full opportunity to testify and that his counsel examined the defendant at length on direct examination.[2] Thus, the court's action did not deprive the plaintiff of a meaningful opportunity to present evidence and to cross-examine the defendant.

Having decided that the termination of the hearing did not result in a due process violation, we also assess whether it was an abuse of discretion for the court not to grant the plaintiff's motion to open. In short, we can envision a circumstance in which it would be an abuse of discretion for the court not to open the judgment and to vacate the orders to schedule a new hearing, notwithstanding the absence of a due process violation associated with the termination of the hearing. In making this assessment, we look to the particular circumstances of the case. In this instance, we are persuaded that the court did not abuse its discretion in denying the plaintiff's motion because the plaintiff had a reasonable opportunity to examine the defendant, and because counsel did not object seasonably and request an additional opportunity to present evidence. As noted, at the time the court, sua sponte, terminated the hearing, neither counsel objected. In particular, the plaintiff did not suggest that he had any further evidence to present to the court. Additionally, counsel did not ask the court to allow him to present further evidence until after he had received the court's order denying his motion to modify alimony and to be granted sole custody. A party may not stand idle, hoping to realize the fruits of the court's apparent wrath and then, disappointed that a victory has not been realized, belatedly request a new chance to present further evidence. Under these circumstances, it was not an abuse of discretion for the

---

[2] Although the record does not reveal the precise times at which the hearing commenced and ended, we note that the hearing, in toto, encompassed 102 transcript pages.

court to deny the plaintiff's motion to open the judgment, to vacate its orders and to schedule a new hearing.

The judgment is affirmed.

In this opinion the other judges concurred.