## KARYN GIL *v.* JOHN A. GIL
### (AC 25912)

Flynn, Harper and Dupont, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 4—officially released March 14, 2006

*Jonathan W. A. Ruhe*, for the appellant (plaintiff).

*Louis Kiefer*, for the appellee (defendant).

*Campbell D. Barrett*, guardian ad litem, with whom, on the brief, was *Kevin W. Hadfield*, certified legal intern, for the minor child.

### Opinion

DUPONT, J. The plaintiff, Karyn Gil, appeals from the judgment of the trial court, finding her in contempt for denying the defendant, John A. Gil, his court-ordered visitation with their minor child. On appeal, the plaintiff claims that the court improperly (1) found her in contempt for acts that were not pleaded in the defendant's motion for contempt and for time periods not included in the motion for contempt, (2) found her in contempt for violating orders that were ambiguous and vague, (3) terminated the hearing on the motion without providing her an opportunity to defend herself, (4) relied on evidence contained in the medical records of the child for purposes of determining whether she was in contempt, and (5) relied on testimony from the child's former psychologist and excluded timely evidence from the

child's current treating psychologist. We disagree and affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant for the resolution of the plaintiff's claims on appeal. On May 18, 1999, the plaintiff filed a complaint, seeking dissolution of her marriage to the defendant. On April 10, 2000, the court rendered judgment dissolving the marriage and incorporated by reference a separation agreement between the parties, which the court found was fair and equitable. The separation agreement provided for, inter alia, joint legal custody of the parties' minor child, primary residence to be with the plaintiff and visitation by the defendant two days per week.[1]

The agreement provided that the defendant would not exercise overnight visitation until the child's psychologist deemed that it was appropriate. The parties were to "exert every reasonable effort to maintain free access and unhampered contact . . . and foster a feeling of affection between the child and the other party." Additionally, the agreement provided that "[n]either party shall do anything which may estrange the child from the other party nor injure the opinion of the child as to [her] mother or father nor act in such a way as to hamper the free and natural development of any of the child's love and respect for the other party." In 2001, the agreement was modified with respect to the previously discussed visitation scheme.[2] The defendant

---

[1] Under the visitation scheme, the dates and times of the visitation were to be arranged three months in advance, as soon as the defendant received his work schedule. This scheme was later modified by stipulation of the parties so that visitation would be arranged thirty days in advance.

[2] The parties agreed that the defendant's access to the child would be from 9 a.m. to 5 p.m. on days that fall on the weekend and 4 p.m. to 7 p.m. on weekdays. Additionally, "[i]f one of [the child's] social, school, music, dance or sports activities takes place during [the defendant's] visitation time, [the defendant] will pick up the child from [the plaintiff's] residence after the activity is completed."

would provide the plaintiff with his work schedule with requested days and times for visitation, and the plaintiff would respond with a list of changes based on the child's activities and other commitments.

On September 3, 2003, the defendant filed a motion for contempt, claiming that "from 2000 to present," the plaintiff had shortened the defendant's hours of visitation and, on numerous occasions, denied visitation. On that same date, the court appointed attorney Campbell D. Barrett as guardian ad litem for the child. On October 30, 2003, the defendant filed a motion for attorney's fees incurred in enforcing compliance with the court's visitation orders. The hearings on the motions began on November 13, 2003. Additional hearing dates occurred on November 14, 2003, and March 25 and 26, and April 5, 2004. On April 5, 2004, the court found the plaintiff in contempt and ordered that she pay the attorney's fees for the defendant's counsel. The plaintiff subsequently filed a motion to reargue, which was denied by the court. This appeal followed.

As a preliminary matter, we set forth the legal principles that guide our resolution of the plaintiff's claims and identify the applicable standard of review.[3] "The court's authority to impose civil contempt penalties arises not from statutory provisions but from the common law. . . . The penalties which may be imposed, therefore, arise from the inherent power of the court to coerce compliance with its orders. In Connecticut, the court has the authority in civil contempt to impose on the contemnor either incarceration or a fine or both." (Citations omitted.) *Papa* v. *New Haven Federation of*

---

[3] In her brief, the plaintiff failed to set forth the standard of review for each of her claims. See Practice Book § 67-4 (d). The defendant claims that our review is "limited to questions of jurisdiction such as whether the court had authority to impose the judgment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt." (Internal quotation marks omitted.)

*Teachers*, 186 Conn. 725, 737–38, 444 A.2d 196 (1982). An appeal from a judgment of civil contempt is technically limited to "questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt." (Internal quotation marks omitted.) Id., 731. Civil contempt may be improper if, among other things, "the findings on which it was based were ambiguous and irreconcilable . . . ." (Citations omitted.) Id., 732. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [alleged contemnor] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . [T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Rocque* v. *Design Land Developers of Milford, Inc.*, 82 Conn. App. 361, 370, 844 A.2d 882 (2004).

The plaintiff's first claim is that the court improperly found her in contempt for acts and time periods that were not pleaded in the defendant's motion for contempt. Specifically, the plaintiff contends that the finding of contempt for actions of which the plaintiff had no notice is a violation of her due process rights. She alleges that she had no notice that the court would consider evidence of acts that occurred subsequent to the date of the filing of the contempt motion; thus, the finding of contempt, premised on those acts, violated her due process rights. In support of her argument, the

plaintiff alleges the following facts: (1) the defendant's motion for contempt, dated September 3, 2003, alleged that "from 2000 to present," the plaintiff had shortened hours of visitation and denied visitation on numerous occasions; (2) the court heard evidence of visitation disruptions from January, 2003, to April, 2004; and (3) the court found the plaintiff in contempt, in part, for failing to follow visitation orders from September 3, 2003, to April 5, 2004. The plaintiff also argues that the court found her in contempt for actions that were not the subject of the defendant's motion for contempt, specifically interactions with various medical, psychological and educational professionals.[4]

"[T]he interpretation of pleadings is always a question of law for the court. . . . The modern trend, which is

_____

[4] That interpretation misconstrues the court's findings and orders. The court clearly and unambiguously found the plaintiff in contempt for denying and interfering with the defendant's court-ordered visitation. The court stated: "[The plaintiff] is in contempt. She has been in contempt since before September 11, 2003, and she has been in contempt since at least October 31, 2003. She is in continuous, constant and unmitigated contempt of the orders of the court. These are my findings with respect to that. . . .

"In order for there to be a contempt, the order needs to be clear. In this case, the order is clear. The person must be able to prevent the conduct; that is, the person must have the ability to comply with the orders of the court. . . .

"The only excuse that [the plaintiff] would have for not complying with the orders of the court were if she were to allege that she was incompetent as a parent. That's the only excuse that she has because, in effect, what she says is [that] she has no ability to control what her child does. . . .

"There were numerous visitations that were denied before September 11, since June. There have been numerous visitations that have been denied, since it was clear at the end of October that [the defendant] was resuming his effort to do visitation."

The court then made "additional findings" that served as a sharp reprimand of the plaintiff for other conduct in which she had engaged since the judgment of dissolution and in response to the plaintiff apparently shaking her head in disagreement with the court. The court, however, did not rely on those factual findings as the basis for its finding of contempt for interference and denial of visitation. After citing numerous incidents of the plaintiff's deplorable behavior, the court then stated that such behavior, in normal circumstances, would justify incarceration, but that the court would not pursue that avenue.

followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [A pleading] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Citations omitted; internal quotation marks omitted.) *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 795, 807 A.2d 467 (2002). "Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 174, 851 A.2d 1113 (2004).

The defendant's motion for contempt recites that the "plaintiff . . . has disobeyed the court order in the following ways . . . . From 2000 to present, the plaintiff has shortened my hours of visitation. At other times, I have not received my visitation at all . . . ." Read broadly and realistically, as well as in the context of this dispute, the motion encompassed a continuing course of conduct theory. The court issued its original order in April, 2000. The defendant's motion clearly alleged that the plaintiff had engaged in a continuous course of contemptuous conduct from the inception of the order to the date of filing, with no indication that such conduct would cease absent the court exercising its coercive power. The plaintiff cannot complain now that she was not on notice that the court would find her in contempt for the allegedly contemptuous conduct that continued even after the motion was filed.

It is beyond dispute that the defendant's motion for contempt placed the plaintiff on notice that her conduct from 2000 to September 3, 2003, interfering with and denying the defendant's court-ordered visitation,

formed the basis of the defendant's motion. It borders on disingenuousness for the plaintiff to claim that she was not on notice that the court could find her in contempt for what the defendant had specifically pleaded as a three year continuing course of conduct, as well as for any subsequent identical conduct.[5] The plaintiff's claim is contrary to both common sense and the well settled principle that pleadings must be construed broadly and realistically, rather than narrowly and technically.[6]

Next, the plaintiff claims that the court improperly found her in contempt because the orders were ambiguous and vague. Specifically, the plaintiff argues that the original order and subsequent modification were ambiguous and vague because the defendant's work schedule was rotating constantly, and the order required the parties to arrange visits as to specific days and times, which were then subject to being shortened due to the child's activities. The plaintiff contends that the disputes between the parties regarding visitation are further evidence of the ambiguity and vagueness of the orders.[7] According to the plaintiff, the orders appear specific, but are, in fact, very open-ended, ambiguous and vague.

---

[5] The plaintiff did not file a request to revise, seeking the specific visitation dates claimed to have been missed, nor did the plaintiff object to evidence of missed visitation dates occurring after the filing of the motion for contempt.

[6] When a party has drafted a motion for contempt that may reasonably be read to include a continuing course of conduct theory, imposing a requirement that the party file additional motions, pleading essentially the same facts, until the original motion is adjudicated wastes the resources of both the court and the filing party. In addition, it requires a hypertechnical interpretation and an exceptionally formalistic application of due process requirements.

[7] We note that "where there is an ambiguous term in a judgment, a party must seek a clarification upon motion rather than resort to self-help. The appropriate remedy for doubt about the meaning of a judgment is to seek a judicial resolution of any ambiguity; it is not to resort to self-help." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 777–78, 804 A.2d 889 (2002).

"In order to constitute contempt, a party's conduct must be wilful. . . . The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind. . . . A good faith dispute or legitimate misunderstanding of the terms of an . . . obligation may prevent a finding that the [conduct] was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion." (Citations omitted; internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 718, 784 A.2d 890 (2001).

In light of Connecticut case law, we reject the plaintiff's claim. The plaintiff claims that the orders were ambiguous and vague. According to the plaintiff, the court was precluded, therefore, from finding the plaintiff in contempt. That argument asks us to follow a rule of law that is contrary to that expressed in *Sablosky*. "This court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated in subsequent cases and possibly discarded is not for this court to decide." *Somohano* v. *Somohano*, 29 Conn. App. 392, 393–94, 615 A.2d 181 (1992). As a result, the plaintiff's claim is unavailing.[8]

In the plaintiff's third claim on appeal, she asserts that the court improperly terminated the contempt hearing, denying her any further opportunity to mount a defense. According to the plaintiff, the court began interrupting

---

[8] Nowhere in the plaintiff's brief does she assert that the court abused its discretion or that a finding of contempt, in light of such alleged ambiguity and other facts, was an abuse of discretion. "Failure to present . . . a properly briefed claim constitutes an invitation to 'work the vineyard'—an invitation that we necessarily must decline." *Grimm* v. *Grimm*, 276 Conn. 377, 394 n.20, 886 A.2d 391 (2005).

testimony during the defendant's cross-examination of the plaintiff and, after the plaintiff completed her cross-examination of the guardian ad litem, the court delivered its ruling on the motion for contempt without providing any opportunity for the plaintiff to call any further witnesses. The plaintiff, analogizing the present case to *Szot* v. *Szot*, 41 Conn. App. 238, 674 A.2d 1384 (1996), and *Morgera* v. *Chiappardi*, 74 Conn. App. 442, 813 A.2d 89 (2003), claims that the court's denial of her fair opportunity to be heard violates her right to due process.[9]

"A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . . Generally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. . . . It is a fundamental tenet of due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution that persons whose . . . rights will be affected by a court's decision are entitled to be heard at a meaningful time and in a meaningful manner. . . . Where a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing, an order cannot be sustained." (Citation omitted; internal quotation marks omitted.) *Szot* v. *Szot*, supra, 41 Conn. App. 241–42.

"Nothing in *Szot*, however, suggests that a party's right to present evidence is unlimited."[10] *Eilers* v. *Eilers*,

[9] The defendant and the guardian ad litem assert that the present case more closely resembles the facts in *Eilers* v. *Eilers*, 89 Conn. App. 210, 873 A.2d 185 (2005), and *Friezo* v. *Friezo*, 84 Conn. App. 727, 854 A.2d 1119, cert. denied, 271 Conn. 932, 859 A.2d 930 (2004).

[10] As the defendant aptly points out, "[u]nlike the United States Senate, our rules of civil procedure do not permit a filibuster."

89 Conn. App. 210, 218, 873 A.2d 185 (2005). In *Friezo* v. *Friezo*, 84 Conn. App. 727, 854 A.2d 1119, cert. denied, 271 Conn. 932, 859 A.2d 930 (2004), we affirmed the judgment of the trial court, notwithstanding the fact that the court had terminated the hearing over counsel's objections. "Although not expressly stated in *Friezo*, it is implicit in the court's opinion that both parties had an adequate opportunity to present evidence and to cross-examine adverse witnesses prior to the court's conclusion of the hearing, notwithstanding the defendant's protestations that he wanted to continue his cross-examination of the plaintiff. Thus, unlike *Szot*, in which this court found that one party had been denied a meaningful opportunity to present evidence, we made no similar finding in *Friezo*. This distinction is key to harmonizing *Szot* and *Friezo* . . . ." *Eilers* v. *Eilers*, supra, 219.

Here, as in *Eilers* and *Friezo*, unlike *Szot*, we conclude that the plaintiff was not denied a meaningful opportunity to present evidence or to cross-examine adverse witnesses. At the outset, we note that like the plaintiff in *Eilers*, the plaintiff here did not object to the court's termination of the hearing. Further, the contempt hearing was conducted over several dates, and the question of whether the plaintiff was in contempt was litigated extensively. The record reveals that the plaintiff had a full opportunity to testify and that her counsel examined the other witnesses at length. Although the plaintiff filed a motion to reargue, setting forth seven separate areas for reargument, the motion failed to reference any additional evidence that the plaintiff wanted to offer or additional witnesses whom the plaintiff wanted to call. Thus, the court's action did not deprive the plaintiff of a meaningful opportunity to be heard.

Next, the plaintiff claims that the court improperly relied on evidence contained in the medical records of

the child for the purposes of establishing contempt. Specifically, the plaintiff asserts that her behavior, as memorialized in the medical records, was not relevant to the child's medical treatment. The court, therefore, should have redacted all references to the plaintiff's behavior from the medical records. The plaintiff does not argue that the medical records themselves were irrelevant or inadmissible under the business records exception. The plaintiff contends only that the court improperly failed to redact the portions of the records that were not relevant to the treatment of the child. We disagree.

"It is axiomatic that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *William C.*, 267 Conn. 686, 700–701, 841 A.2d 1144 (2004).

All relevant evidence is admissible except as provided by the federal or state constitutions or by Connecticut's statutes or code of evidence. Conn. Code Evid. § 4-2. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 29, 807 A.2d 955 (2002). The fact that evidence may be subject to several interpretations does not affect its admissibility as long as it can be construed as relevant.

*State* v. *Sanchez*, 69 Conn. App. 576, 584, 795 A.2d 597 (2002).

The admissibility of medical reports and records created by medical experts is governed by General Statutes § 52-174 (b), which provides in relevant part: "[I]n all court proceedings in family relations matters . . . any party offering in evidence a signed report and bill for treatment of any treating physician [or] psychologist . . . may have the report and bill admitted into evidence as a business entry . . . ."

"To be admissible under the business record exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in . . . [General Statutes] § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter. . . . In applying the business records exception, the statute [§ 52-180] should be liberally interpreted." (Internal quotation marks omitted.) *Calcano* v. *Calcano*, 257 Conn. 230, 240, 777 A.2d 633 (2001). Section 52-180 (a) recognizes "the inherent trustworthiness of records on which businesses rely to conduct their daily affairs." *State* v. *Kirsch*, 263 Conn. 390, 400, 820 A.2d 236 (2003).

"Once [the criteria of § 52-180] have been met by the party seeking to introduce the record . . . it does not necessarily follow that the record itself is generally admissible, nor does it mean that everything in it is required to be admitted into evidence. . . . For example, the information contained in the record must be relevant to the issues being tried. . . . In addition, the information contained in the report must be based on the entrant's own observation or on information of oth-

ers whose business duty it is to transmit it to the entrant. . . . If the information does not have such a basis, it adds another level of hearsay to the report which necessitates a separate exception to the hearsay rule in order to justify its admission. . . . Furthermore, we also have recognized that information contained in business records is only admissible pursuant to § 52-180 if the information is related to the business of the record's entrant. Consequently, in the context of hospital reports, we have concluded that only the portions of a hospital report associated with the business of a hospital, that is the information relevant to the medical treatment of a patient, are admissible pursuant to the business records exception. . . . We have reached a similar result with regard to a physician's report and have stated that [o]nce the report is ruled admissible under the statute, any information that is not relevant to medical treatment is subject to redaction by the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *William C.*, supra, 267 Conn. 704.

Here, the information contained in the medical records was plainly relevant to the issues being tried. The plaintiff placed the medical records in issue when she claimed that the interrupted visitation and telephone contact were justified by the child's medical needs, specifically the stress and anxiety she was feeling due to the telephone contact and visitation with the defendant. There is no claim that the records relied on by the court did not fit within the business records exception. Furthermore, the portions of the records that document the plaintiff's behavior were relevant to the treatment of the child because they gave insight into the source of the child's anxiety regarding contact with the defendant. Specifically, the question was whether the plaintiff had manipulated the anxiety disorder in order to interrupt telephone contact and visitation between the child and the defendant, or whether

the plaintiff was the original cause of the anxiety disorder. Therefore, the court did not abuse its discretion when it admitted the child's medical records without redaction.

In the plaintiff's final claim, she contends that the court improperly relied on testimony from the child's former psychologist while excluding evidence from the child's current psychologist. The plaintiff actually makes two claims, which we will address in turn. The plaintiff first claims that the testimonial evidence of Nancy Einsworth, the child's former psychologist, was both irrelevant and stale. The plaintiff asserts that because Einsworth had not seen the child in almost four years, the evidence was outdated. Next, the plaintiff claims that the court improperly excluded the testimony of Laura Ginther, the child's current psychologist. According to the plaintiff, Ginther would have provided testimony regarding the child's mental health status at the time of the hearing, which was relevant to the defense of contempt.

As stated previously, "[t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) Id., 701.

In *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 303, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988), we held that the trial court improperly refused to consider the child's best interest at the time of the custody determination. We relied on the fact that the trial court had recited the plaintiff mother's past medical history and did not discuss her present abilities to be a primary caretaker for the child. Id. The trial court placed great weight on a family custody relations report, which had

been produced thirteen months prior to its introduction into evidence. Id. Further, the trial court relied on testimony from the domestic relations officer who prepared the report. Id. The officer admitted at trial that he had had no contact with the parties or the minor child since producing the report. Id. On the ground that the thirteen month old family relations report was not probative of the " 'present best interests' "; id.; of the child at the time of the custody determination, we ordered a new hearing concerning the custody award. Id., 304. Nevertheless, our Supreme Court has also held that "the court must . . . take account of the parents' past behavior, since it must evaluate their present and future parenting ability and the consistency of their parenting for the purpose of determining which parent will better foster the [child's] growth, development and well-being." *Yontef* v. *Yontef*, 185 Conn. 275, 283, 440 A.2d 899 (1981). Any delay between Einsworth's examination of the child and the parties and her testimony affected the weight of the testimony rather than its admissibility. See *Blake* v. *Blake*, 207 Conn. 217, 225, 541 A.2d 1201 (1988).

In the present case, Einsworth's testimony related to the child's historical diagnosis, as well as Einsworth's observations and interactions with the parties and their child. Those observations were relevant both to the past parenting ability of the parties and the origin of the child's anxiety disorder. Without that information, the court's capacity to evaluate the parties' present and future parenting ability would have been unnecessarily handicapped. Further, without Einsworth's testimony regarding her initial diagnosis and the causes of anxiety, the court's ability to determine the source of the child's present anxiety, as described by the parents and the guardian ad litem, would have been hampered. We note that there is no indication that the court did not consider the present actions of the parties or the present condition of the child, as well as the past. In fact, the court

heard testimony from both parties, the guardian ad litem and school personnel regarding the recent actions of the parties and their recent observations of the child's reaction to visitation and contact with the defendant. The court, without objection from either party, also reviewed the child's medical records. The plaintiff had a full opportunity at the hearing to point out any deficiencies concerning Einsworth's examination of the child and the parties. We conclude that the court did not abuse its discretion in considering the testimony of Einsworth.

We also disagree with the plaintiff's claim that the court improperly excluded the testimony of Ginther, the child's current psychologist. The plaintiff essentially claims that the court improperly permitted the guardian ad litem to protect the confidentiality of the child's current treatment over the plaintiff's desire to put the substance of the treatment into evidence.

General Statutes § 52-146c (b), which pertains to psychologist-patient privilege, provides in relevant part: "Except as provided in subsection (c) of this section, in civil . . . actions . . . all communications shall be privileged and a psychologist shall not disclose any such communications unless the person or his authorized representative consents to waive the privilege and allow such disclosure. . . ." It goes without saying that this statute recognizes a person's interest in the confidential communications with his or her psychologist. We have recognized that "[i]n child custody proceedings, parents lack the necessary professional and emotional judgment to further the . . . interests of their children. Neither parent could be relied on to communicate to the court the children's interests where those interests differed from his or her own. . . . A parent's judgment is or may be clouded with emotion and prejudice due to the estrangement of husband and wife." (Citation

omitted; internal quotation marks omitted.) *Taff* v. *Bettcher*, 35 Conn. App. 421, 427–28, 646 A.2d 875 (1994).

General Statutes § 45a-132 provides in relevant part: "(a) In any proceeding before . . . the Superior Court . . . the judge . . . may appoint a guardian ad litem for any minor . . . if it appears to the judge . . . that one or more persons as individuals . . . have or may have an interest in the proceedings, and that one or more of them are minors . . . . (d) Any appointment of a guardian ad litem may be made with or without notice and, if it appears to the judge . . . that it is for the best interests of a minor having a parent or guardian to have as guardian ad litem some person other than the parent or guardian, the judge . . . may appoint a disinterested person to be the guardian ad litem. . . ." "[T]he purpose of authorizing a guardian ad litem is to ensure that the interests of the ward are well represented." *Cottrell* v. *Connecticut Bank & Trust Co.*, 175 Conn. 257, 263, 398 A.2d 307 (1978).

"Typically, the child's attorney is an advocate for the child, while the guardian ad litem is the representative of the child's best interests." (Internal quotation marks omitted.) *Ireland* v. *Ireland*, 246 Conn. 413, 439, 717 A.2d 676 (1998). In *Newman* v. *Newman*, 235 Conn. 82, 96, 663 A.2d 980 (1995), our Supreme Court was concerned "about creating conflict in the attorney's role by conflating the role of counsel for a child with the role of a guardian ad litem or next friend. . . . As an advocate, the attorney should honor the strongly articulated preference . . . of a child who is old enough to express a reasonable preference; as a guardian, the attorney might decide that, despite such a child's present wishes, the contrary course of action would be in the child's long term best interests, psychologically or financially." A similar concern about a conflict was raised in *State* v. *Garcia*, 233 Conn. 44, 658 A.2d 947 (1995), on appeal after remand, 235 Conn. 671, 669 A.2d

573 (1996). Our Supreme Court stated that when an incompetent criminal defendant's legal and medical interests diverge, he should have both legal counsel to represent his legal or expressed interests and a guardian ad litem to represent his medical or best interests. Id., 90 n.36.

Here, there is no indication that the child's legal interests and psychological interests were at odds. Further, the child was not represented by counsel during the contempt and modification of visitation proceedings. The guardian ad litem in this case was in the best position to evaluate and to exercise the child's confidentiality rights.[11] Consistent with § 52-146c (b), the guardian ad litem invoked the child's privilege. As a result, we do not agree with the plaintiff that the court improperly excluded the testimony of the child's current psychologist. For all of the foregoing reasons, we do not agree that the court acted improperly.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The guardian ad litem sought, and was granted, permission to participate in oral argument before this court.

