### KARYN GIL *v.* JOHN A. GIL
### (AC 28760)

McLachlan, Lavine and McDonald, Js.

 

Argued May 29—officially released October 14, 2008

*Barbara J. Ruhe*, for the appellant (plaintiff).

*Louis Kiefer*, for the appellee (defendant).

*Opinion*

McLACHLAN, J. The plaintiff, Karyn Gil, appeals from the judgment of the trial court awarding the defendant, John A. Gil, attorney's fees in the amount of $30,659.54. The attorney's fees were awarded to the defendant following an adjudication of contempt of the plaintiff, and for the work performed by the defendant's attorney,

Louis Kiefer, defending the plaintiff's appeal, in which she challenged the finding of contempt. The plaintiff argues that the court improperly (1) ordered attorney's fees for the contempt finding that were greatly in excess of the defendant's retainer agreement[1] and (2) awarded excessive attorney's fees for the work performed for the first appeal in the litigation between the parties. See *Gil* v. *Gil*, 94 Conn. App. 306, 310, 892 A.2d 318 (2006) (*Gil I*). We affirm the judgment of the trial court.

The plaintiff and the defendant were married in Avon on November 28, 1992. They have one minor child from this marriage, born on March 25, 1995. On May 18, 1999, the plaintiff filed a complaint seeking dissolution of her marriage to the defendant. On April 10, 2000, the court, *Prestley, J.*, dissolved the parties' marriage and incorporated into its judgment the provisions of a marital settlement agreement (settlement). In the settlement, both parties agreed that they would have joint legal custody of their child and that their child would reside with the plaintiff. The parties further stipulated that the defendant would have visitation with the child two days per week, to be arranged between the parties three months in advance.

In *Gil I*, this court stated: "On September 3, 2003, the defendant filed a motion for contempt, claiming that 'from 2000 to present,' the plaintiff had shortened the defendant's hours of visitation and, on numerous occasions, denied visitation. On that same date, the

---

[1] The retainer agreement, entered into by the defendant and attorney Kiefer, contained the following provisions: "Hourly rate: I bill on the basis of time spent devoted to your case. My hourly rate is $1.00. . . .

"Work not covered: This retainer does not include any work in Appellate Courts or any other actions or proceeding or out-of-pocket disbursements. . . .

"Recovery of attorney's fees: In the event you recover attorney's fees, whether based on contempt or general principles, those fees shall be payable to Louis Kiefer and shall represent additional compensation."

court appointed attorney Campbell D. Barrett as guardian ad litem for the child. On October 30, 2003, the defendant filed a motion for attorney's fees incurred in enforcing compliance with the court's visitation orders. The hearings on the motions began on November 13, 2003. Additional hearing dates occurred on November 14, 2003, and March 25 and 26, and April 5, 2004. On April 5, 2004, the court, [*Gruendel, J.*], found the plaintiff in contempt and ordered that she pay the attorney's fees for the defendant's counsel.[2] The plaintiff subsequently filed a motion to reargue, which was denied by the court." Id. This court affirmed the judgment of the trial court.[3] Id., 325.

---

[2] Although Judge Gruendel ordered the plaintiff to pay attorney's fees of the defendant, he did not determine an amount. The order dated April 5, 2004, stated: "The plaintiff, Ms. Economu [formerly known as] Mrs. Gil, is found in contempt of court and will pay attorney Louis Kiefer's legal fees for the contempt action."

[3] During the pendency of the plaintiff's appeal, the parties agreed to continue the matter concerning the attorney's fees, for the finding of contempt, until after *Gil I*. Additionally, during the first appeal, the defendant filed a motion for attorney's fees for the work performed for the defense of the appeal. In response, the plaintiff filed an objection to the motion for attorney's fees, claiming that on the basis of the retainer agreement between the defendant and his counsel, the defendant is entitled to only $1 an hour.

After this court affirmed Judge Gruendel's finding of contempt, the parties participated in several hearings concerning the matter of attorney's fees and other matters involved in the case. As the court, *Hon. Herbert Barall*, judge trial referee, wrote in its memorandum of decision: "On October 6, 2004, Judge Gruendel ordered the plaintiff to pay fees to [the] defendant's counsel for his bringing an action related to the child's school attendance for which the attorney for the defendant spent 5.8 hours of time. On January 25, 2005, an order was issued permitting the guardian ad litem to file a brief in the case and ordered all outstanding fees owed by [the plaintiff] to be paid within [thirty] days. On May 12, 2005, after Judge Gruendel had become an Appellate Court judge, Judge Solomon ordered the plaintiff to pay the sum of $8783 to the guardian ad litem, attorney Campbell Barrett. On July 8, 2005, attorney Barbara J. Ruhe, attorney for the plaintiff, filed a memorandum of law as to the issue of attorney's fees for the defendant's attorney, Louis Kiefer. On July 19, 2005, attorney Louis Kiefer filed a memorandum of law related to his fees for the contempt. On December 15, 2005, Judge Solomon granted counsel fees in the amount of $400 to attorney Kiefer with regard to Judge Gruendel's order of October 6, 2004, despite the plaintiff's

The amount of the attorney's fees for the finding of contempt against the plaintiff and the attorney's fees related to the first appeal were referred to the court, *Hon. Herbert Barall,* judge trial referee, on December 15, 2005. The court held several hearings on June 8 and November 16, 2006, and February 8, 2007. On March 8, 2007, the court issued its memorandum of decision ordering the plaintiff to pay the attorney's fees of the defendant and costs for the contempt proceedings in the amount of $19,552.10 and the fees and costs for the appeal in the amount of $11,107.44, totaling $30,659.54 in legal fees. On March 12, 2007, the plaintiff filed a motion to reargue, which the court denied on March 21, 2007. This appeal followed.

At the outset, we note that "[t]he well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) *Simms* v. *Simms,* 283 Conn. 494, 502, 927 A.2d 894 (2007).

Moreover, "[w]e review a trial court's rulings as to attorney's fees and the allowance of additional evidence for an abuse of discretion. See *Mangiante* v. *Niemiec,* 98 Conn. App. 567, 569–70, 910 A.2d 235 (2006); *Wasson* v. *Wasson,* 91 Conn. App. 149, 155, 881 A.2d 356, cert. denied, 276 Conn. 932, 890 A.2d 574 (2005). Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest

argument that Kiefer was only entitled to his $1 per hour rate or $5.80 for 5.8 hours of work."

abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Landry* v. *Spitz*, 102 Conn. App. 34, 59, 925 A.2d 334 (2007).

I

On appeal, the plaintiff asserts that the court improperly ordered attorney's fees (1) for the contempt finding, which were greatly in excess of the rate agreed on by the defendant and his counsel as set forth in the retainer agreement and (2) for the work performed by Kiefer for *Gil I*. The plaintiff argues further that the retainer agreement entered into by the defendant and Kiefer violates the Rules of Professional Conduct.

The plaintiff asserts that a significant issue in this case is the retainer agreement entered into by the defendant and Kiefer. Under this fee arrangement, the defendant was obligated to pay his attorney only $1 per hour and could collect attorney's fees, if any were recovered, on the basis of a finding of contempt or other "general principles . . . ." The plaintiff insists that this type of fee arrangement violates the Rules of Professional Conduct because it acts as a contingency fee agreement, and the Rules of Professional Conduct prohibit contingency agreements in domestic relations matters.[4] In opposition, the defendant contends that the retainer agreement does not violate the Rules of Professional Conduct.

---

[4] The plaintiff refers to the statements of the court, *Solomon*, *J.*, who was involved at an earlier stage of the litigation. Judge Solomon questioned the retainer agreement by stating: "[W]hen the only way you acquire a fee is through the contempt process, I think that presents really serious issues. . . . First of all, from the strict professional standpoint, you are cast in the position as an officer of the court, both to represent your client, but also to act as an officer of the court." Judge Barall, however, found that this retainer agreement did not violate the Rules of Professional Conduct. We agree with Judge Barall.

The plaintiff overstates the ethical prohibitions of the Rules of Professional Conduct because although the rules do not permit contingency agreements in dissolution actions, they do permit an agreement such as the one before us, in which the attorney does not have a pecuniary interest in the outcome of the dissolution action. Rule 1.5 (d) provides in relevant part: "A lawyer shall not enter into an arrangement for, charge, or collect: (1) Any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a dissolution of marriage or civil union or upon the amount of alimony or support, or property settlement in lieu thereof . . . ." Rules of Professional Conduct 1.5 (d). Rule 1.8 (i) provides: "A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may: (1) Acquire a lien granted by law to secure the lawyer's fee or expenses; and (2) Contract with a client for a reasonable contingent fee in a civil case." Rules of Professional Conduct 1.8 (i).

The defendant argues that rule 1.5 (d) is inapplicable on the basis of the commentary to that rule. The commentary provides in relevant part: "Subsection (d) prohibits a lawyer from charging a contingent fee in a domestic relations matter when payment is contingent upon the securing of a divorce or upon the amount of alimony or support or property settlement to be obtained. This provision does not preclude a contract for a contingent fee for legal representation in connection with the recovery of post-judgment balances due under support, alimony or other financial orders because such contracts do not implicate the same policy concerns." Rules of Professional Conduct 1.5 (d), commentary. The main policy concern behind rule 1.5 (d) is that contingency agreements for a dissolution action

would discourage lawyers from advocating for an amicable settlement because the lawyers would have a pecuniary interest in the outcome of the dissolution action. This policy concern is not relevant in the present case because the parties' marriage already has been dissolved, and the result of the contempt proceeding is based on the court's discretion. Judge Barall found that the plaintiff did not prove by clear and convincing evidence that the retainer agreement violated the Rules of Professional Conduct because the "fee in this case was contingent only on a judge ordering a reasonable fee in accordance with [General Statutes] §§ 46b-82 or 46b-87 but not for those matters specifically stated in rule 1.5 (d)."[5] We agree with the court.

II

The plaintiff next claims that the court improperly awarded attorney's fees to the defendant's counsel for the contempt proceeding and for the work he performed for the plaintiff's first appeal.

The plaintiff asserts that the award of attorney's fees for the contempt proceeding was improper because Kiefer submitted a bill in the amount of $19,000 to the court, calculated at his normal hourly rate of $250 per hour.[6] On the basis of the fee arrangement between the defendant and his counsel, the plaintiff submits that Kiefer should recover the fees only at a rate of $1 per hour.

---

[5] The court noted that pursuant to rule 1.6 of the Rules of Professional Conduct, attorneys are encouraged to offer their services for no fees or for reduced fees for persons of limited means. At oral argument and throughout the record, Kiefer acknowledged that the unique fee arrangement in this case was entered into for the benefit of the defendant, who is a person of limited means. Moreover, during the June 8, 2006 hearing before Judge Barall, Kiefer testified that he has not collected his $1 per hour attorney's fees from the defendant.

[6] We note that the plaintiff did not object to the fact that court awarded the defendant attorney's fees but objected to the amount awarded to the defendant.

In support of her argument, the plaintiff maintains that an order of attorney's fees under § 46b-87 can be made for a finding of contempt, and although there is no requirement that the fees are to be awarded with reference to the parties' relative financial positions, the fees must be reasonable.[7] In response, the defendant argues that the court properly awarded him attorney's fees because the award of attorney's fees in contempt proceedings is within the discretion of the court. The defendant maintains that § 46b-87 is designed to reimburse the winning side and to be punitive in nature, and, therefore, the court reached the correct result.

In the present case, the court rejected the plaintiff's claims that Kiefer should be limited to attorney's fees on the basis of his rate of $1 per hour. The court found that the defendant had every right to seek "reasonable fees to recoup his resources through a judge's decision, which may deter noncompliance with the law." We agree that because Judge Gruendel awarded attorney's fees for Kiefer's services provided at the contempt proceeding and because a court has the discretion to award reasonable attorney's fees to discourage future noncompliance by the plaintiff, Judge Barall did not abuse his discretion.

Our law for awarding attorney's fees in contempt proceedings is clear. "General Statutes § 46b-87 pro-

[7] Furthermore, in awarding attorney's fees for the work performed for the five day contempt proceeding, the court rebuffed the plaintiff's attempts to distinguish *Benavides* v. *Benavides*, 11 Conn. App. 150, 526 A.2d 536 (1987). In *Benavides*, this court reversed the trial court's decision to reduce the plaintiff's attorney's fees because the plaintiff was represented by a legal services organization and, therefore, did not have legal fees. This court held that although the plaintiff was not required to pay for legal services, there is a public policy to relieve the taxpayers. This court stated: "It would be unreasonable to allow a losing party in a family relations matter to reap the benefits of free representation to the other party. A party should not be encouraged to litigate under the assumption that no counsel fee will be awarded in favor of the indigent party represented by public legal services . . . ." (Internal quotation marks omitted.) Id., 154.

vides that the court may award attorney's fees to the prevailing party in a contempt proceeding. The award of attorney's fees in contempt proceedings is within the discretion of the court." *Esposito* v. *Esposito*, 71 Conn. App. 744, 748, 804 A.2d 846 (2002). "In making its determination, the court is allowed to rely on its familiarity with the complexity of the legal issues involved. Indeed, it is expected that the court will bring its experience and legal expertise to the determination of the reasonableness of attorney's fees. . . . Moreover, because the award of attorney's fees pursuant to § 46b-87 is *punitive*, rather than compensatory, the court properly may consider the *defendant's behavior* as an additional factor in determining both the necessity of awarding attorney's fees and the proper amount of any award." (Citations omitted; emphasis added.) Id., 750. Therefore, on the basis of the punitive nature of an award of attorney's fees in contempt proceedings, we cannot conclude that the court abused its discretion when it awarded the defendant attorney's fees in the sum of $19,552.10 for the work Kiefer performed for the contempt proceeding.

The plaintiff next claims that the court improperly awarded the defendant attorney's fees for the work performed defending the appeal in *Gil I*. The plaintiff acknowledges that the court must look to General Statutes § 46b-62 for guidance when it determines the award for attorney's fees for an appeal. Section 46b-62 requires a court to examine factors outlined in § 46b-82. Additionally, the plaintiff argues that the court must also consider the parties' relative financial circumstances. The plaintiff maintains that the defendant incurred little or no obligation to pay his counsel, that the defendant is employed and could afford to pay his counsel, that the plaintiff is permanently disabled and unable to work, and that the plaintiff's assets are not excessive in relation to the defendant's assets. Therefore, the

plaintiff submits that because the defendant is in a far better position to pay his legal fees, he should be required to pay his fees related to the first appeal.

The court awarded attorney's fees for the first appeal, stating: "The court has examined the affidavits of both parties. . . . Neither party has substantial wherewithal." The court went on to state: "A most recent case clarifies the issue that another factor can be considered other than the factors of § 46b-62, i.e., litigation misconduct. . . . Judge Gruendel found contempt for violation of court orders against the plaintiff and the egregious behavior continued even after the filing of the motion of contempt. Rather than fulfill her obligations, the plaintiff continued to cause additional expense to another person of limited means. He should receive his attorney's appellate fees." (Citation omitted.)

Our Supreme Court has held that litigation misconduct can be considered in determining an award of attorney's fees under § 46b-62. In *Ramin* v. *Ramin*, 281 Conn. 324, 353, 915 A.2d 790 (2007), the court wrote: "[I]n *Jewett* [v. *Jewett*, 265 Conn. 669, 830 A.2d 193 (2003)], we implicitly acknowledged that a party's litigation misconduct can form part of the basis of such an award of attorney's fees." Thus, the court did not abuse its discretion when it considered the litigation misconduct of the plaintiff in shaping its attorney's fee award for *Gil I*. Moreover, the court did examine the factors enumerated in § 46b-82 and specifically took note of both parties' financial conditions, acknowledging that both parties have limited means. On this basis, we cannot find that the court abused its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.