******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ANGHAM ZAKKO *v.* LAITH KASIR
## (AC 45315)

Clark, Seeley and DiPentima, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the revised financial orders issued by the trial court following its granting of the plaintiff's motion to open the dissolution judgment. In accordance with the parties' separation agreement, which was incorporated into the original dissolution judgment, the defendant was required to pay the plaintiff alimony in an amount equal to 30 percent of his gross earned income from work until he reached the age of sixty-five or, if he received veteran's disability income prior to turning sixty-five, 30 percent of his veteran's disability income plus 30 percent of any additional earned income. After the parties' marriage was dissolved, the defendant became disabled, stopped working, and began receiving Social Security disability benefits in addition to payments from a veteran's disability policy and a MassMutual disability insurance policy. As a result, the defendant's earned income decreased, and he began paying the plaintiff significantly less alimony. The defendant did not pay the plaintiff any portion of the income he received from the MassMutual policy because he did not believe that it constituted earned income for purposes of the dissolution judgment. The plaintiff filed a motion to open the dissolution judgment, arguing that it had been secured by fraud on the part of the defendant or, in the alternative, that it was obtained by the mutual mistake of the parties regarding the defendant's income and assets. At a hearing to determine whether the plaintiff was entitled to pursue discovery with respect to her fraud allegations, the plaintiff's counsel began questioning the defendant about the MassMutual policy. Following an objection by the defendant's counsel, the trial court started questioning the parties' attorneys and did not allow either counsel to further question the defendant or to present other evidence. The trial court then stated that it found that the defendant had not committed fraud because the defendant had listed the MassMutual policy on his financial affidavit and issued an order from the bench opening the judgment of dissolution with respect to financial orders on the basis of mutual mistake and fundamental fairness. Following a trial held for the purpose of issuing new financial orders, the trial court, inter alia, rejected the plaintiff's claim that the MassMutual policy constituted property subject to equitable division because the defendant's entitlement to benefits under that policy was inchoate at the time of the original dissolution judgment. The plaintiff appealed, and the defendant cross appealed, to this court. *Held* that the trial court deprived the defendant of his due process rights by not allowing him to be heard in a meaningful manner on the plaintiff's motion to open the dissolution judgment: the trial court's actions prevented the defendant's counsel from examining his own client, who was the sole witness to testify at the hearing, and from introducing any evidence of his own in opposition to the plaintiff's motion; moreover, although the trial court stated that it was opening the judgment on the basis of a mutual mistake, it did not clearly identify the issue about which the parties were purportedly mistaken, and, due to its failure to provide the parties with a meaningful opportunity to introduce evidence, the record did not support a finding that the parties were mutually mistaken regarding whether the plaintiff was entitled to share in the value or proceeds of the MassMutual policy; furthermore, contrary to the plaintiff's assertion that the defendant's due process rights were not violated because there were no disputed issues of material fact concerning her claim of a mutual mistake, the transcript from the hearing at which the original dissolution judgment was rendered did not, by itself, establish that the parties were mutually mistaken about anything with respect to the MassMutual policy, an evidentiary hearing was required to resolve the plaintiff's motion to open, and, because the trial court failed to conduct an evidentiary hearing that comported with due process, it lacked the

authority to issue the new financial orders that the plaintiff challenged on appeal; accordingly, this court reversed the judgment of the trial court and remanded the case with direction to reinstate the original financial orders and to hold a new hearing on the motion to open.

Argued October 11, 2023—officially released January 9, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Hon. Edward J. Dolan*, judge trial referee, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Hon. Edward J. Dolan*, judge trial referee, granted the plaintiff's motion to open the judgment as to financial matters only, and the defendant appealed to this court, which granted the plaintiff's motion to dismiss the appeal; subsequently, the matter was tried to the court, *Klau, J.*; judgment revising certain financial orders, from which the plaintiff appealed and the defendant cross appealed to this court. *Reversed*; *further proceedings*.

*David V. DeRosa*, for the appellant-cross appellee (plaintiff).

*Angham Zakko*, self-represented, the appellant-cross appellee (plaintiff).

*David A. McGrath*, with whom was *Ashley Cervin*, for the appellee-cross appellant (defendant).

*Opinion*

CLARK, J. This appeal and cross appeal arise from the trial court's judgment granting a motion to open a dissolution judgment as to financial matters only filed by the plaintiff, Angham Zakko, and the subsequent entry of new financial orders. On appeal, the plaintiff claims that the trial court, *Klau, J.*, erred in fashioning revised financial orders by (1) failing to classify a private disability policy as a marital asset, subject to division under General Statutes § 46b-81, (2) crafting inequitable alimony orders, (3) ordering an inequitable property distribution, and (4) not compelling the defendant, Laith Kasir, to provide her with a signed authorization in order to complete discovery on alleged foreign bank accounts. On cross appeal, the defendant claims that the trial court, *Hon. Edward J. Dolan*, judge trial referee, erred in granting the plaintiff's motion to open the dissolution judgment in the first instance because (1) it deprived him of due process by failing to provide adequate notice that the judgment might be opened at a preliminary discovery hearing and a meaningful opportunity to be heard or to present evidence before granting the motion, and (2) there was no evidence to support the court's conclusion that there was a mutual mistake. We agree with the defendant that the trial court deprived him of his due process rights and, therefore, that it was improper for the court to grant the plaintiff's motion to open. Because it was improper for the court to open the dissolution judgment, we further conclude that the court lacked the authority to issue the new financial orders that the plaintiff challenges on appeal. Accordingly, we reverse the judgment of the trial court and remand the case with direction to reinstate the April 5, 2016 financial orders and to hold a new hearing on the motion to open.

The following facts and procedural history are relevant to our resolution of this appeal and cross appeal. On April 5, 2016, the court, *Hon. Edward J. Dolan*, judge trial referee, rendered judgment dissolving the parties' marriage. The parties' separation agreement (agreement) was incorporated into the judgment of dissolution. The agreement divided the marital property and provided that the defendant would pay the plaintiff alimony of "30% of his gross earned income from work until such time as [the defendant] attains the age of 65. This is currently $1,142 a week. If, prior to attaining the age of 65, [the defendant] commences receiving Veteran's Disability Income, then [the defendant's] alimony obligation shall be reduced to 30% of his gross Veteran's Disability Income plus 30% of additional earned income, if any, he may have in addition to his Veteran's Disability."

After the dissolution of the parties' marriage, the defendant became disabled. His disability prevented him from working, but he began receiving Social Secu-

rity disability benefits in addition to payments from a veteran's disability policy and a separate MassMutual disability insurance policy (MassMutual policy). Due to the defendant's disability and his inability to work, the defendant's earned income decreased significantly. As a result, he began paying the plaintiff significantly less in alimony. The defendant did not pay the plaintiff any portion of the income he received from the MassMutual policy because the dissolution judgment was silent as to that policy, and it was his position that the income he received from that policy did not constitute "earned income" for purposes of the dissolution judgment.

The plaintiff filed myriad postjudgment motions, including a motion to compel and a motion for modification filed on October 10, 2017, and two separate motions for contempt filed on November 13 and December 19, 2017. In these motions, the plaintiff argued, inter alia, that (1) the defendant was required to pay her 30 percent of the income he received under the MassMutual policy and (2) the defendant had failed to pay the plaintiff either 30 percent of his total veteran's disability benefits before the benefits were reduced by his Social Security disability benefits or 30 percent of his Social Security disability benefits. On December 22, 2017, the plaintiff filed a memorandum of law in support of her request to conduct postjudgment discovery, seeking information regarding the MassMutual policy.

On January 19, 2018, the defendant filed an objection to both the plaintiff's December 19, 2017 motion for contempt and the memorandum of law in support of the plaintiff's request for discovery in connection with her claim that she was entitled to 30 percent of the income the defendant received under the MassMutual policy. The defendant argued that the MassMutual policy did not constitute "earned income" under the agreement and the dissolution judgment and that the defendant, therefore, was not required to pay the plaintiff any portion of the income he received under that policy.

On January 23, 2018, the court, *Connors, J.*, issued an order sustaining the defendant's objection to the plaintiff's postjudgment discovery requests with respect to her pending motions. In so ruling, the court concluded that "[t]he language in the judgment [was] clear and unambiguous. Pursuant to the terms of the judgment, the plaintiff's alimony [was] limited to 30 percent of the defendant's veteran's disability benefits and 30 percent of any other earned income. Income from any other sources is therefore irrelevant."

Thereafter, on March 22, 2019, the plaintiff filed a motion to open the judgment, arguing that "the judgment was secured by fraud on the part of the defendant" or that, in the alternative, "the judgment was obtained by the mutual mistake of the parties regarding the defendant's income and assets." In her memorandum of law in support of her motion, the plaintiff claimed that the

defendant had committed fraud by (1) "failing to list the veteran's [disability] policy as an asset on his financial affidavit," (2) "failing to value his [MassMutual policy]," (3) "failing to list the [dividends] he received from the MassMutual policy as income," (4) "failing to list the premiums he paid for the veteran's disability policy and the MassMutual polic[y] in expenses," and (5) "falsely stating that his disability income would be $118,000 for the first year and then $79,000 thereafter." In the alternative, the plaintiff asserted that the judgment should be opened due to the parties' mutual mistake. Specifically, the plaintiff argued that both parties "incorrectly calculated the defendant's income upon his disability and incorrectly believed that the defendant's assets and income were accurately represented on his financial affidavit" and that the defendant "mistakenly misstated his disability income and the value of his MassMutual policy on his financial affidavit . . . ." In his objection to the plaintiff's motion to open, the defendant maintained that there had been no fraud or mutual mistake. With respect to the MassMutual policy, the defendant argued that (1) "the MassMutual [policy] was fully disclosed and accurately represented on [the defendant's] financial affidavits" and (2) "[the defendant's] representations at the time of judgment as to the facts that then existed . . . were entirely accurate and not mistaken."

On June 25, 2019, the court, *Hon. Edward J. Dolan*, judge trial referee, held a hearing with respect to the plaintiff's motion to open. At that hearing, both parties represented to the court that the purpose of the hearing was to determine whether the plaintiff was entitled to pursue discovery with respect to her fraud allegations by establishing that there was probable cause to believe that the defendant had committed fraud. See *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 269–70, 540 A.2d 713 (1988).[1] After a brief hearing, which will be discussed in greater detail subsequently in this opinion, the court found that the defendant had not committed fraud but, nevertheless, issued an order opening the judgment of dissolution only with respect to the financial orders on the basis of mutual mistake. The defendant subsequently appealed the court's judgment granting the plaintiff's motion to open, but this court dismissed that appeal because it concluded that the court's order did not constitute a final judgment. See *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 459, 239 A.3d 272 (2020) ("[i]t is well settled that, as a general rule, the granting of a motion to open renders a trial court's judgment nonfinal and, therefore, ineffective pending its resolution" (internal quotation marks omitted)).

Thereafter, the court held a trial for the purpose of issuing new financial orders. That trial took place over the course of five separate days between April and October, 2021. Following trial, the court, *Klau, J.*, issued a memorandum of decision dated February 3,

2022, acknowledging that the parties' marriage had been dissolved as of April 5, 2016, and rendering judgment issuing revised financial orders concerning both the parties' property and income. With respect to alimony, the court ordered the defendant to pay the plaintiff $500 per week, which the court found amounted to 38 percent of the parties' combined net weekly incomes. The court also rejected the plaintiff's claim that the MassMutual policy constituted property subject to equitable division pursuant to § 46b-81. The court reasoned that the defendant's entitlement to disability benefits under the MassMutual policy was inchoate at the time of the original dissolution judgment because he was not disabled at that time and the prospect of him receiving benefits under that policy was speculative.[2]

This appeal and cross appeal followed. Given the nature of the defendant's cross appeal, which challenges the court's decision to open the judgment of dissolution in the first instance, we address his claims first. Additional facts will be set forth as necessary.

On cross appeal, the defendant claims that the court violated his right to due process of law by not allowing him to be heard in a meaningful manner on the plaintiff's motion to open the 2016 dissolution judgment before the trial court granted the motion.[3] Specifically, the defendant claims that he was not afforded a reasonable opportunity to present evidence, to call his own witnesses, or to be examined by his attorney, as he was the sole witness allowed to testify at the hearing on the plaintiff's motion to open. We agree with the defendant.

We begin by setting forth our standard of review and the relevant legal principles governing the defendant's claim. "Whether the court violated the defendant's constitutional procedural due process rights is a question of law over which our review is plenary. . . . [F]or more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. . . . It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. . . . [T]hese principles require that a [party] have . . . an effective opportunity to defend by confronting any adverse witnesses and by presenting his [or her] own arguments and evidence orally." (Citation omitted; internal quotation marks omitted.) *Merkel* v. *Hill*, 189 Conn. App. 779, 786–87, 207 A.3d 1115 (2019).

"A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved. . . . Generally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to

present evidence and to cross-examine adverse witnesses. . . . It is a fundamental tenet of due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution that persons whose . . . rights will be affected by a court's decision are entitled to be heard at a meaningful time and in a meaningful manner. . . . Where a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing, an order cannot be sustained." (Internal quotation marks omitted.) *Morera* v. *Thurber*, 187 Conn. App. 795, 799–800, 204 A.3d 1 (2019).

It is axiomatic that parties have a right to present evidence on contested issues when at a hearing before the court. See *Eilers* v. *Eilers*, 89 Conn. App. 210, 218, 873 A.2d 185 (2005) ("we hold that a party has a due process right to present evidence on contested factual issues and that a court's annoyance or impatience with the pace and range of questioning or the court's disgust with a witness will not justify the termination of a hearing before a party has been given a reasonable opportunity to examine and to cross-examine witnesses on facts pertinent to the issues at hand"); *Szot* v. *Szot*, 41 Conn. App. 238, 242, 674 A.2d 1384 (1996) (trial court "did not have the right to terminate the hearing before the plaintiff had a fair opportunity to present evidence on the contested issues" where trial court had ended cross-examination and entire presentation of evidence due to its apparent frustration with plaintiff's counsel).

In the present case, the court did not allow the defendant's counsel to examine the one witness who testified at the hearing on the motion to open or to offer any of his own evidence in opposition to the plaintiff's motion to open. At the beginning of the hearing, the plaintiff's counsel, Attorney Alan Rome, called the defendant as a witness. Shortly after Rome began questioning the defendant about the underlying divorce proceedings and the MassMutual policy, the defendant's counsel, Attorney David McGrath, objected to the line of questioning. Rather than ruling on the objection, the court began questioning the attorneys and never allowed the parties to return to questioning the witness or to present additional evidence. During that exchange, and after reviewing the transcript from the hearing at which it had rendered the original dissolution judgment, the court made clear to the parties that, in its view, and contrary to the conclusion Judge Connors previously had reached when denying the plaintiff's request for postjudgment discovery in connection with the Mass-Mutual policy, the original dissolution judgment required the defendant to pay the plaintiff 30 percent of the income he received from the MassMutual policy.[4] Thereafter, and without allowing the parties to introduce any further evidence, the court issued an order from the bench opening the judgment as to financial

matters only, stating: "Go outside, act like grownups and settle this case. I'm going to reopen it. You have the right to pursue discovery and if you would rather pay your lawyer [than] give the money that will ultimately go to your kids, God bless you, and I can't stop you from being ridiculous." After making this statement, the court began to question both parties as to how much money they had paid their attorneys in legal fees, in comparison to how much money they were attempting to gain through a judgment in their favor, before reiterating that it was opening the judgment.[5] When the defendant's counsel asked the court to make it clear for the record whether it was making a finding that there was probable cause to believe that fraud existed, the court stated that it did not find that there was fraud because the defendant had listed the MassMutual policy on his financial affidavit. Instead, the court stated that it was opening the judgment on the basis of mutual mistake and fundamental fairness.[6]

On the record before us, it is clear that the defendant did not have a reasonable opportunity to be heard in opposition to the plaintiff's motion to open the dissolution judgment. The court's actions prevented the defendant's counsel from examining his own client, who was the sole witness to testify at the hearing, and from introducing any evidence whatsoever of his own. Moreover, although the court stated that it was opening the judgment on the basis of a mutual mistake, the court did not clearly identify what the parties purportedly were mistaken about. Additionally, due to the court's failure to provide the parties with a meaningful opportunity to introduce evidence, the record does not support a finding that the parties were mutually mistaken about whether the plaintiff was entitled to share in the value or proceeds of the MassMutual policy. Indeed, it is difficult to conceive of how the court could make such a finding when the parties themselves were never even given the opportunity to testify about that question.

The plaintiff claims that the defendant's due process rights were not violated because there were no disputed issues of material fact concerning her claim that there had been a mutual mistake with respect to the MassMutual policy. In her view, the record supports the court's finding of mutual mistake because the court made that finding on the basis of its review of the transcript of the hearing at which it rendered the judgment of dissolution in 2016. As a result, she contends that no evidentiary hearing was required. We are not persuaded.

We have reviewed the transcript from the hearing at which the original dissolution judgment was rendered and conclude that it does not by itself establish that the parties were mutually mistaken about anything with respect to the MassMutual policy. First, because the court seemed to base its ruling on its own determination that the original dissolution judgment actually required

the defendant to pay the plaintiff 30 percent of his income from the MassMutual policy, the court did not identify the mutual mistake. Consequently, it is not possible to conclude that the transcript from the hearing on the original dissolution judgment shows that the parties were mutually mistaken. Second, the plaintiff makes two differing arguments in support of her claim that there was a mutual mistake between the parties concerning the MassMutual policy. On the one hand, she claims that, at the time of the original dissolution judgment, the MassMutual policy constituted marital property that was subject to equitable division and that both parties mistakenly assigned the policy no value. On the other hand, she also argues that the parties were mutually mistaken when they failed to include the income from the MassMutual policy in their calculation of her alimony benefit. Putting aside the fact that these two differing positions reflect that the plaintiff is unable to articulate clearly the purported mutual mistake, the transcript from the 2016 hearing at which the original dissolution judgment was rendered does not support either theory.[7]

Contrary to the plaintiff's assertions, therefore, we conclude that an evidentiary hearing was required to resolve the plaintiff's motion to open. That conclusion is consistent with our case law, which makes clear that when deciding a motion to open on the basis of mistake, due process generally requires that the parties be given an opportunity to present evidence. "A motion to open a stipulated judgment, when grounded on mistake or duress, necessarily requires the court to make a factual determination before it can exercise its discretion to grant or deny the motion . . . . In making its factual determination whether a stipulated judgment should be opened, the court must inquire into whether the decree itself was obtained by fraud, duress, accident or mistake. . . . When such a factual determination must be made, due process requires a hearing to provide the parties with an opportunity to present evidence." (Citation omitted; internal quotation marks omitted.) *Housing Authority* v. *Goodwin*, 108 Conn. App. 500, 507, 949 A.2d 494 (2008).

Because the court failed to conduct an evidentiary hearing that comported with due process, its order opening the judgment as to financial matters must be reversed. In addition, because the court improperly opened the judgment, it lacked the authority to issue the new financial orders the plaintiff seeks to challenge in this appeal. See *Callahan* v. *Callahan*, 157 Conn. App. 78, 81, 116 A.3d 317 (court reversed judgment issuing substitute financial orders and remanded case with direction to reinstate original financial orders where trial court did not have authority to open dissolution judgment), cert. denied, 317 Conn. 913, 116 A.3d 812 (2015), and cert. denied, 317 Conn. 914, 116 A.3d 813 (2015). Accordingly, we need not address the plaintiff's

claims regarding those financial orders.

The judgment is reversed and the case is remanded with direction to reinstate the April 5, 2016 financial orders and to hold a new hearing on the motion to open.

In this opinion the other judges concurred.

[1] "In *Oneglia* v. *Oneglia*, [supra, 14 Conn. App. 269–70], this court held that, in considering a motion to open on the basis of fraud, a court must first make a preliminary determination of whether there is probable cause to believe that the judgment was obtained by fraud. *Oneglia* and its progeny are grounded in the principle of the finality of judgments. . . . [T]he finality of judgments principle recognizes the interest of the public as well as that of the parties [that] there be fixed a time after the expiration of which the controversy is to be regarded as settled and the parties freed of obligations to act further by virtue of having been summoned into or having appeared in the case. . . . Without such a rule, no judgment could be relied on. . . . *Oneglia* carefully balanced that interest in finality with the reality that in some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity. . . . The court in *Oneglia* thus ratified the gatekeeping mechanism employed by the trial court, whereby a court presented with a motion to open by a party alleging fraud in a postjudgment dissolution proceeding conducts a preliminary hearing to determine whether the allegations are substantiated. . . . [I]f the plaintiff was able to substantiate her allegations of fraud beyond mere suspicion, then the court [properly] would open the judgment for the limited purpose of discovery, and would later issue an ultimate decision on the motion to open after discovery had been completed and another hearing held. . . . This preliminary hearing is not intended to be a full scale trial on the merits of the [moving party's] claim. The [moving party] does not have to establish that he [or she] will prevail, only that there is probable cause to sustain the validity of the claim." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Karen* v. *Loftus*, 210 Conn. App. 289, 297–98, 270 A.3d 126 (2022).

[2] The court also stated that, after reviewing the case file in preparation for the trial, it was "firmly convinced" that any misunderstanding concerning the MassMutual policy was limited to the plaintiff and that there was at most a unilateral mistake, not a mutual mistake. Nevertheless, because it was unclear to the court whether it had the inherent authority to vacate another judge's earlier order opening a judgment, it proceeded with the trial of the opened dissolution matter.

[3] The defendant also claims, and the parties seem to dispute, whether proper notice was given that the court would actually consider and rule on the plaintiff's motion to open the judgment rather than conduct a preliminary *Oneglia* hearing. See footnote 1 of this opinion. The defendant also argues that, because an *Oneglia* hearing is held only to determine whether there is probable cause to believe the original judgment was obtained by fraud, it was improper for the court to open the judgment at this type of hearing on the basis of a finding of mutual mistake. Because the record is unclear as to whether the hearing was scheduled solely for the purpose of addressing the narrow question of whether there was probable cause to believe that the defendant had committed fraud and because we nevertheless conclude that the court conducted the hearing in a manner that deprived the defendant of due process when it opened the judgment, we need not address these claims.

[4] The court and the parties' attorneys engaged in the following colloquy:

"The Court: Here's the real question as far as I'm concerned. Let me take five minutes and read the transcript.

"[McGrath]: And Your Honor, both sides filed memoranda of law in preparation.

"The Court: I want to answer my question first. . . . If he is collecting on another disability policy, then he's got to pay her 30 percent of that. . . . It's income and he owes her 30 percent of it, period.

"[Rome]: I agree with you 100 percent, Your Honor.

"The Court: So, what are we talking about?

"[Rome]: So, let me explain what happened. . . . [The plaintiff] filed a motion for contempt and a motion for modification to get the 30 percent paid. Judge Abery-Wetstone ruled denying those motions because of the language in the separation agreement that says 'earned income,' and because the . . . MassMutual [policy] is paid with after tax dollars, it was not earned

income . . . .

* * *

"[McGrath]: So, Your Honor, if you look to the actual language of the judgment there were two versions of the agreement. One of which was crossed out and initialed by the parties and was replaced with another one. And what they initially bargained for was that [the defendant] would pay alimony up to age sixty-two and . . . it changed to sixty-five. . . . And, in addition to that change, with that change, what they bargained for was they changed the term 'any income or gross income' to 'earned income' and earned income explicitly included this [MassMutual policy]. . . . Judge Connors specifically . . . concluded and entered an order saying that earned income did not include any distributions from his MassMutual [policy]. He had that hearing. Evidence was presented, legal argument was made and Judge Connors found that that was not included and denied [the plaintiff's] motion for contempt. . . .

"The Court: But why am I doing this? . . .

"[Rome]: . . . The issue . . . is exactly your point, Your Honor, is that this intent and your language that you read in the transcript says exactly if you get any check, you pay her 30 percent. That was my client's understanding. He had a MassMutual policy at the day of the divorce. He was disabled at the day of the divorce according to his own testimony under oath today.

"The Court: Forget about being disabled. I don't care about any—you are making this ten times more complicated than it is. It is not complicated. He got a check. He owed her 30 percent as far as I'm concerned, but the question is, am I overruling somebody else's order?

"[Rome]: No. This is a new motion, Your Honor, and all today is about is whether we have probable cause to do additional discovery. They won't even turn over how much he's getting. . . .

"The Court: Sir, how much are you getting from MassMutual?

"[McGrath]: Your Honor, for the record I object.

"The Court: Fine. How much are you getting?

"[The Defendant]: About $6000 something per month.

"The Court: So, six—

"[The Defendant]: Between $6000 and $7000, I'm not sure exactly the number.

"The Court: All right. So, let's say it's $6000. So, 30 percent of $6000 is what?

"[Rome]: $1800, Your Honor.

"The Court: So, it's $1800 and you probably spent over [$15,000] on legal fees in this case already and terrific. This is absolutely ridiculous, absolutely ridiculous."

[5] The court stated: "So, we're arguing over $18,000. You have each blown $15,000 and you are each guaranteed to pay another $15,000 based on my ruling today, which could be right or could be wrong, and if that's what you want to do with your money, God bless you, and there isn't a thing I can do to stop you. You're a doctor. You have a brain. This is purely a financial thing. Figure out a way to settle this case. I mean it's just ridiculous. But as far as the ruling is concerned, I've reopened it. And now you can either act like grownups and settle the case or you can appeal and if I get reversed on appeal you can come back and spend another $15,000 rearguing it. If that's what you want to do, go do it."

[6] The following colloquy took place:

"[McGrath]: For purposes of the record, are you making a finding that there is probable cause that a fraud existed here?

"The Court: No, not fraud, mutual mistake. I don't approve of the mentality of either of these people, but I don't think it was fraud because it was listed on his financial affidavit and it's even conceivable to me that it didn't even occur to him at that point that he was going to be able to collect on that policy. I'm not claiming fraud but on the question of fundamental fairness and mutual mistake she is entitled to that money."

[7] Although there was an exchange on the record between the court and the parties about the defendant's obligation to pay some portion of his veteran disability benefits as alimony, there was no discussion whatsoever of the MassMutual policy:

"The Court: So, you—if you go and you get V.A. money, a V.A. disability, you have to give her 30 percent of the gross of that V.A. disability and then you have an affirmative obligation to provide her with copies of your tax returns every year. And if you find any employment to supplement your income, you have to pay her 30 percent of that . . . you understand that?

"[The Defendant]: Yes, Your Honor.

"The Court: And you understand what I've just said? You have to answer

out loud.

"[The Plaintiff]: Yes, Your Honor, yes."

---